UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JILL HENDERSON, ET AL.

CIVIL ACTION

VERSUS

NO.   21-297-JWD-RLB

BOARD OF SUPERVISORS OF
SOUTHERN UNIVERSITY AND A&M
COLLEGE, ET AL.

RULING AND ORDER

This matter comes before the Court on *Defendants' Motion to Dismiss Plaintiff's Claims*
(Doc. 5) filed by Defendants Board of Supervisors of Southern University and A&M College
("Southern"); Herman Brister, Jr., individually and in his official capacity as director of the
Southern Laboratory School ("Brister"); and Renita Sherrard, individually and in her official
capacity as assistant principal of the Southern Laboratory School ("Sherrard") (collectively,
"Defendants"). Plaintiff Jill Henderson, individually and on behalf of her minor son J.T.
("Plaintiff"), opposes the motion. (Doc. 7.) Defendants filed a reply. (Doc. 10.) Oral argument is
not necessary. The Court has carefully considered the law, the facts in the record, and the
arguments and submissions of the parties and is prepared to rule. For the following reasons, the
motion is granted, and Plaintiff is given twenty-eight (28) days within which to file an amended
complaint.

I.      Relevant Factual Background

This action arises from the alleged sexual harassment of Plaintiff's minor son J.T. while he
was a high school student at the Southern University Laboratory School ("Southern Lab"). The
following factual allegations are taken from the Plaintiff's Petition. (Doc. 1-2.) They are assumed

to be true for purposes of this motion. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014).

J.T. attended Southern Lab during the 2020–21 school year. (*See* Doc. 1-2 at 2, ¶ 3.) After receiving approval to graduate early, on September 2, 2020, another student added J.T. to the senior class group text. (*Id.*) "Almost immediately" after joining this group text, J.T.'s classmates began harassing and bullying him in the message thread. (*Id.*) According to the Petition, the other students "sexually harass[ed] J.T. by sending derogatory remarks in reference to his sexual orientation." (*Id.*) Plaintiff alleges that this "ruthless cyber bullying continued until J.T. removed himself" from the group text. (*Id.*)

On September 3, 2020, J.T. reported the harassment incident to Sherrard, Southern Lab's assistant principal. (*Id.* at ¶ 4.) Four days later, Sherrard informed J.T. that she spoke "with a student involved in the sexual harassment and . . . made the [student's] parents . . . aware of their child's involvement in the incident." (*Id.*)

The next day, Plaintiff contacted Brister, Southern Lab's director, to inquire about the investigation. (*Id.* at ¶ 5.) Brister told Plaintiff that he "had not yet had a chance to investigate the incident but would contact her once he had done so." (*Id.*) Later that day, "Brister contacted Human Resources and accused J.T. of instigating the harassment." (*Id.*) Two days later, Brister admitted to Plaintiff that he "dropped the ball" and insisted that she "submit written documentation" of J.T.'s sexual harassment and bullying allegations. (*Id.* at ¶ 6.) That same day, after learning from Sherrard that J.T. reported the harassment, one of the students involved in the incident "threatened J.T." (*Id.* at ¶ 7.)

On October 8, 2020, "a verbal altercation occurred between" J.T. and Tony Brown, a Southern Lab teacher, during which Mr. Brown "cursed at J.T." (*Id.* at ¶ 8.) Plaintiff alleges that

2

"[o]n this occasion, and in contrast to J.T.'s complaints," Brister "acted immediately." (*Id*.) On October 12, 2020, Brister informed Plaintiff that J.T. was being sent home "until further notice" and that J.T. was "denied all opportunities to participate in school activities, specifically including those special activities for the senior class." (*Id*. at 3, ¶ 9.) Plaintiff learned two days later that Mr. Brown "had resumed teaching his normal classes" and "suffered no punishment," despite cursing at J.T. (*Id*. at ¶ 11.) Plaintiff filed a Title IX complaint against Southern that day for sexual harassment and retaliation. (*Id*. at ¶ 12.)

Based on these events, Plaintiff filed the instant suit against Southern; Brister, individually and in his official capacity as director of Southern Lab; and Sherrard, individually and in her official capacity as assistant principal of Southern Lab. (*See* Doc. 1-2 at 1.) Plaintiff's Petition asserts the following claims: (1) sexual harassment in violation of Title IX, 20 U.S.C. § 1681 *et seq*. ("Title IX"); (2) retaliation in violation of Title IX; (3) claims for violations of J.T.'s rights under the First and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983 against Brister and Sherrard; and (4) claims for violations of J.T.'s rights to privacy and confidentiality under Louisiana law against Sherrard. (*Id*. at 3–4.) Plaintiff seeks compensatory damages, attorney's fees, punitive damages, and all such other relief to which she is entitled. (*Id*. at 4–5.) Defendants now move to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

4

### III.    Discussion of Title IX Claims

#### A.  Title IX Generally

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Title IX is 'enforceable through an implied private right of action,' and 'monetary damages are available in the implied private right of action.'" *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 209 (5th Cir. 2019) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998)). "A plaintiff may obtain damages under Title IX 'where the funding recipient engages in intentional conduct that violates the clear terms of the statute.'" *Id.* at 209–10 (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)). "The Supreme Court has 'consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional discrimination.'" *Id.* at 210 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005)). "Thus, a school's 'deliberate indifference' to a student's claims of sexual harassment by a classmate may amount to an intentional violation of Title IX." *Id.* (citing *Davis*, 526 U.S. at 643–46). Similarly, "retaliat[ion] against a person *because* he complains of sex discrimination" constitutes intentional discrimination in violation of Title IX. *Jackson*, 544 U.S. at 174.

#### B.  Student-on-Student Harassment

##### 1. Parties' Arguments

Defendants first argue that, to the extent Plaintiff's Title IX claim arising from the harassing conduct of Southern Lab's students is cognizable under Supreme Court and Fifth Circuit precedent, this claim should be dismissed because the Petition lacks the requisite factual allegations to support such a claim. (Doc. 5-1 at 5.)

In response, Plaintiff maintains that both the Supreme Court and the Fifth Circuit have recognized the existence of a private right of action against a school board for student-on-student sexual harassment under Title IX. (Doc. 7 at 5 (citing *Davis*, 526 U.S. 629 (1999); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156 (5th Cir. 2011)). Plaintiff then argues that each of the requisite elements set forth by the Fifth Circuit in *Sanches* for imposing liability for student-on-student harassment are alleged against Southern Lab. (*See* Doc. 7 at 5–7 (citing *Sanches*, 647 F.3d at 165).)[1] Plaintiff asserts that Southern Lab was deliberately indifferent to known sexual harassment of J.T. by other students. (*Id.* at 6.) In support of her deliberate indifference claim, Plaintiff argues that, after J.T. and Plaintiff reported the harassment, Southern Lab "took no action to remedy the situation," "failed to investigate," and admitted that it "dropped the ball." (*Id.*)

In reply, Defendants concede that *Sanches* is controlling authority for student-on-student harassment claims under Title IX. (Doc. 10 at 3–4.) Defendants contend, however, that *Sanches* underscores three major deficiencies in Plaintiff's Petition. (*Id.* at 4.) First, "[P]laintiff has not come close to showing sexual harassment much less—as *Sanches* and its progeny require—harassment so severe, pervasive, and objectively unreasonable to deny J.T. access to [Southern Lab's] educational programs." (*Id.*) Second, contrary to Plaintiff's arguments, the Petition does not demonstrate that Southern Lab responded to J.T.'s harassment complaint in a manner that was "deliberately indifferent." (*See id.* at 5–6.) Third, the Petition fails to allege that Southern Lab

---

[1] The Court observes that, while the Petition alleges that "defendants" violated Title IX's prohibition against "sex discrimination/harassment," (*see* Doc. 1-2 at 4, ¶ 15), Plaintiff's Memorandum in Opposition focuses exclusively on allegations pertaining to Southern in arguing against dismissal of her Title IX student-on-student harassment claim. (*See* Doc. 7 at 5–7.) Thus, it is unclear whether Plaintiff intends to pursue Title IX harassment claims against each named Defendant or only Southern.

exercised the requisite control over the harasser and the context in which the harassment occurred. (*Id*. at 6 (citing *Davis*, 526 U.S. at 645–46).)

## 2. Applicable Law

The Supreme Court has recognized that "student-on-student sexual harassment, if sufficiently severe, can . . . rise to the level of discrimination actionable under" Title IX. *Davis*, 526 U.S. at 650. A plaintiff suing a school district for student-on-student harassment under Title IX must show that: "the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit,' and (5) the district was deliberately indifferent to the harassment." *Sanches*, 647 F.3d at 165 (citing *Davis*, 526 U.S. at 650).

The parties apparently do not dispute the first and third elements of Plaintiff's claim: Defendants had actual knowledge of the alleged harassment and the harassment was based on J.T.'s sex.[2] The parties dispute the remaining elements, however, which the Court addresses below. In sum, the Court finds that Plaintiff has not alleged sufficient facts to state a plausible claim that the students who harassed J.T. were under Southern Lab's control, that J.T. endured sexual harassment that was severe and pervasive, or that Southern Lab acted with deliberate indifference

---

[2] Whether the alleged harassment regarding J.T.'s sexual orientation was based on his sex is not contested in this case. Still, the Court observes that in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the Supreme Court held that Title VII's prohibition on discrimination "because of" an individual's sex includes discrimination based on sexual orientation. Additionally, in 2021, "President Biden issued an executive order declaring that his administration would apply *Bostock*'s interpretation of Title VII to other statutes prohibiting sex discrimination" and "the Department of Justice issued guidance specifically instructing federal agencies to apply *Bostock*'s definition of sex discrimination to Title IX." *Franciscan Alliance, Inc. v. Becerra*, 843 Fed. App'x. 662, 663 (5th Cir. 2021) (citing Exec. Order No. 13,988, 86 Fed. Reg. 7023 (Jan. 20, 2021); Pamela S. Karlan, Principal Deputy Assistant Att'y Gen., U.S. Dep't of Justice, C.R. Div., Memorandum re: Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021)).

to the harassment. Accordingly, the Court will grant Defendants' motion as to Plaintiff's claim for student-on-student harassment under Title IX.

### 3. Analysis

#### a. Harasser Under Southern Lab's Control

The first disputed element is whether Plaintiff has sufficiently pled that J.T.'s harassers were under Southern Lab's control. *See Sanches*, 647 F.3d at 165. The Supreme Court has explained that, because actionable harassment "must occur under the operations of a funding recipient," the harassment "must take place in a context subject to the school district's control." *Davis*, 526 U.S. at 645 (internal quotation marks omitted). Student misconduct that "occurs during school hours and on school grounds" is a context in which the funding recipient retains substantial control. *Id*. at 646. Importantly, "in this setting the Board exercises significant control over the harasser." *Id*. Here, accepting the well-pleaded facts in the Petition as true, Plaintiff has not plausibly alleged that Southern Lab exercised substantial control over the harasser in the context in which the harassing conduct occurred. The Petition alleges that students sent derogatory remarks concerning J.T.'s sexual orientation in a senior class group text. (Doc. 1-2 at 2, ¶ 3.) But the Petition does not allege whether J.T. was subjected to this harassment on school grounds, during school hours, or any other facts supporting a reasonable inference that Southern Lab had the requisite control over the harassers. Thus, Plaintiff has failed to adequately allege this element of her student-on-student harassment claim.

#### b. Severity of the Harassment

The second disputed element is whether Plaintiff has alleged that the harassment at issue was so severe, pervasive, and objectively offensive that it effectively barred J.T.'s access to an educational opportunity or benefit. *See Sanches*, 647 F.3d at 165. Defendants' primary contention

8

as to this element is that Plaintiff has not shown that the harassment was severe, pervasive, and objectively unreasonable. (*See* Doc. 10 at 1–2, 4 (referencing *Sanches*, 647 F.3d at 167).)

As the Fifth Circuit recognized in *Sanches*, "[w]hether conduct rises to the level of actionable harassment 'depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved.'" *Sanches*, 647 F.3d at 167 (quoting *Davis*, 526 U.S. at 651). The Fifth Circuit further explained that "to be actionable, the harassment must be more than the sort of teasing and bullying that generally takes place in schools; it must be 'severe, pervasive, and objectively unreasonable.'" *Id.* (citing *Davis*, 526 U.S. at 652).

The Petition in this case alleges that, upon joining the senior class group text, "students began sexually harassing J.T. by sending derogatory remarks" regarding "his sexual orientation." (Doc. 1-2 at 2, ¶ 3.). This "ruthless cyber bulling continued until J.T. removed himself" from the message thread, according to the Petition. (*Id.*) Plaintiff alleges that the harassment and bullying ultimately resulted in J.T. being "denied all opportunities to participate in school activities," including "special activities for the senior class." (*Id.* at ¶ 9.)

Accepting the Petition's factual allegations as true and viewing them in the light most favorable to Plaintiff, she has alleged that the conduct complained of effectively denied J.T.'s access to an educational benefit. But Plaintiff's general allegations that J.T. suffered "ruthless cyber bullying" by his classmates, who sent "derogatory remarks" via text—without further detail as to the nature of these remarks or the extent of bullying J.T. endured—do not rise to the level of severe, pervasive, and objectively offensive harassment contemplated by Title IX. Accordingly, Plaintiff has failed to plausibly allege that the sexual harassment was so severe, pervasive, and

objectively offensive that it effectively barred J.T.'s access to an educational opportunity or benefit.

### c.  Deliberate Indifference

The third disputed element is whether Southern Lab was deliberately indifferent to J.T.'s sexual harassment complaint. *See Sanches*, 647 F.3d at 165. As explained by the Fifth Circuit: "Deliberate indifference is an extremely high standard to meet. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. Rather, a school district's response to the harassment or lack thereof [must be] clearly unreasonable in light of the known circumstances." *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at \*5 (5th Cir. Feb. 4, 2022) (internal citations and quotation marks omitted). Furthermore, "[s]chools need not 'remedy the harassment or accede to a parent's remedial demands,' and 'courts should refrain from second-guessing the disciplinary decisions made by school administrators." *I.L. v. Houston Indep. Sch. Dist.*, 776 Fed. App'x 839, 842 (5th Cir. 2019) (quoting *Sanches*, 647 F.3d at 167–68).

Here, Plaintiff argues that Southern Lab was deliberately indifferent because Southern Lab failed to respond to J.T.'s harassment complaint with proper remedial action and failed to adequately investigate his allegations. (*See* Doc. 7 at 6.) In essence, Plaintiff contends that Southern Lab was "deliberately indifferent by taking no action." (*Id.*) Yet the Petition suggests that Southern Lab took at least some action, through its administrators, in response to J.T.'s complaint. For instance, four days after J.T. reported the incident to Assistant Principal Sherrard, she told J.T. that she spoke with a student involved in the harassment and informed the student's parents of the incident. (Doc. 1-2 at 2, ¶ 4.) Additionally, though on September 8, 2020, Director Brister told Plaintiff that he had not yet investigated the incident, later that evening, "Brister

10

contacted Human Resources and accused J.T. of instigating the harassment," according to the Petition. (*Id*. at ¶ 5.) Furthermore, on September 10, 2020, Brister told Plaintiff he "dropped the ball" and "then insisted" that Plaintiff "submit written documentation" of the harassment and bullying allegations. (*Id*. at ¶ 6.)

Granted, Defendants likely could have handled their investigative response to J.T.'s harassment allegations better and arguably, their response might even be characterized as "inept, erroneous, ineffective, or negligent." *See Ruvalcaba*, 2022 WL 340592, at *5. But Fifth Circuit precedent "makes it clear that negligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019). Accepting the facts alleged in the Petition and viewing them in the light most favorable to Plaintiff, she has not established that Defendants' response to J.T.'s harassment complaint was clearly unreasonable in light of the known circumstances. *See Sanches*, 647 F.3d at 167 (citing *Davis*, 526 U.S. at 648). Plaintiff has therefore failed to sufficiently allege the deliberate indifference element of her student-on-student harassment claim. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Title IX harassment claim.

## C.  Retaliation

### 1. Parties' Arguments

Defendants argue that Plaintiff's Title IX retaliation claim should be dismissed because the Petition does not plausibly support Plaintiff's claim that Defendants retaliated against J.T. for reporting his peers' misconduct. (Doc. 5-1 at 6–7.)

In response, Plaintiff argues that she has sufficiently alleged a Title IX claim for retaliating against J.T. for his complaints of sexual harassment in September 2020. (Doc. 7 at 8–9.) To support

the causation element of her claim, Plaintiff points to the timing of the "retaliatory discipline," which occurred within one "month of J.T.'s protected activities on September 3, 2020 and September 8, 2020." (*Id*. at 8.) Plaintiff contends that "[t]his is sufficient causal connection." (*Id*.)

In reply, Defendants maintains that Plaintiff's Petition "offers no facts suggesting a link between a complaint about text messages in early September and the consequences of J.T.'s 'verbal altercation' with his teacher weeks later." (Doc. 10 at 7.) Defendants re-urge that the Petition lacks sufficient factual support to give rise to a reasonable inference of retaliation, and that this claim should be dismissed on that basis. (*See id*. at 6–7.)

## 2. Applicable Law

The Supreme Court has held that Title IX's private right of action encompasses claims of retaliation "where the funding recipient retaliates against an individual because he has complained about sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). "To establish a prima facie case of retaliation under Title IX, a plaintiff must show that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action, and (3) 'a causal link exists between the protected activity and the adverse employment action.'" *Trudeau v. Univ. of N. Tex., By and Through its Bd. of Regents*, 861 Fed. App'x. 604, 607–08 (5th Cir. 2021) (per curiam) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)); *see also Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (per curiam) ("The language of the anti-retaliation provision of Title IX and that of Title VII are similar and 'should be accorded a similar interpretation.'" (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 252 n.18 (5th Cir. 1997))).

### 3. Analysis

Defendants primarily attack the third element of Plaintiff's retaliation claim: the causal link between J.T.'s harassment complaint and the adverse action. (*See* Doc. 10 at 6–7.) "In the comparable context of Title VII retaliation claims, the Supreme Court has applied a but-for causation standard." *Trudeau*, 861 Fed. App'x 604, 608 (5th Cir. 2021) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Accordingly, Plaintiff must plead that J.T.'s harassment complaint "was a but-for cause of his punishment." *See id.*

Plaintiff attempts to establish the causation element of her retaliation claim by pointing to the timing of the protected activity and the adverse action. (*See* Doc. 7 at 8.) But the Court finds these assertions insufficient to support a finding of the requisite but-for causation. The Fifth Circuit has held that, "to establish causation on retaliation claims, 'temporal proximity must be very close.'" *Collins*, 609 Fed. App'x. at 796 (citing *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014)). Here, "very close" temporal proximity is lacking because J.T. was disciplined for the verbal altercation with his teacher more than a month after Defendants were notified of J.T.'s harassment complaint. Without more, even accepting the Petition's well-pleaded facts as true, Plaintiff has failed to allege that Defendants' actions were retaliatory. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Title IX retaliation claim.

### IV. Discussion of Section 1983 Official Capacity Claims

#### A. Parties' Arguments

Defendants argue that Plaintiff's claims against Brister and Sherrard in their official capacities should be dismissed because they are not "persons" for purposes of a Section 1983 claim. (Doc. 5-1 at 7.) In response, Plaintiff represents that "Brister and Sherrard may be liable in their official capacities even for a 'single decision' which violates plaintiff's civil rights,"

according to Supreme Court case law. (Doc. 7 at 12 (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978); *Owen v. City of Indep.*, 445 U.S. 622 (1980); *Newport v. Fact Concerts Inc.*, 453 U.S. 247 (1981); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). In reply, Defendants dispute Plaintiff's reliance on *Monell* as inapplicable because "*Monell* concerns municipal liability." (Doc. 10 at 9.) Defendants also assert that "Southern is an arm of the State." (*Id.*) Since the State is not a "person," Defendants reiterate that Brister and Sherrard, in their official capacities, are not "persons" for Section 1983 purposes. (*Id.*)

### B.  Applicable Law and Analysis

"Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Williams v. Louisiana*, CV No. 17-453-JWD-EWD, 2019 WL 1003645, at *4 (M.D. La. Feb. 28, 2019) (internal quotations omitted) (quoting *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007)). "The Supreme Court has held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Id.* (internal quotations omitted) (quoting *Med. RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016)). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Id.* (internal citations and quotations omitted).

Southern University's Board of Supervisors is considered an arm of the State of Louisiana and, therefore, is not a "person" under Section 1983. *See Richardson v. Southern Univ.*, 118 F.3d 450, 456 (5th Cir. 1997). By extension, Brister and Sherrard, as state officials acting in their official capacities, are not "persons" for Section 1983 purposes. Accordingly, the Court will grant

Defendants' motion to dismiss Plaintiff's Section 1983 official capacity claims against Brister and Sherrard.

## V.    Discussion of Section 1983 Individual Capacity Claims

Defendants raise the issue of qualified immunity as to Plaintiff's Section 1983 claims against Brister and Sherrard in their individual capacities for violations of J.T.'s rights under the First and Fourteenth Amendments. (*See* Doc. 5-1 at 7–11.) The Court addresses each of these claims in turn.

### A.  Qualified Immunity

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020), *cert denied*, 141 S. Ct. 1058 (2021) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). "It shields 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Thompson v. Mercer*, 762 F3d 433, 437 (5th Cir. 2014)). To rebut a defendant's qualified immunity defense, the plaintiff must demonstrate "(1) that [the defendant] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)). "[The Court] can analyze the prongs in either order or resolve the case on a single prong." *Id*. (quoting *Garcia*, 957 F.3d at 600).

Regarding the second prong, Plaintiff "bear[s] the burden of showing that the right was clearly established." *Garcia*, 957 F.3d at 600 (citing *Cass*, 814 F.3d at 733). "To be clearly established, a right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id*. at 600–01 (quoting *Mullenix v. Luna*, 577 U.S. 7

(2015) (per curiam)). The Court "cannot 'define clearly established law at a high level of generality.'" *Id*. at 601 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Rather, the question must be 'frame[d] . . . with specificity and granularity.'" *Id*. (quoting *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019)). Courts "do not require plaintiffs to identify a case 'directly on point,' but the case law must 'place the statutory or constitutional question *beyond debate*.'" *Id*. at 600–01 (internal brackets omitted) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)). "Our inquiry 'must be taken in light of the specific context of the case, not as a broad general proposition.'" *Id*. at 601 (quoting *Mullenix*, 136 S. Ct. at 308).

### B.  Fourteenth Amendment Claim

#### 1. Parties' Arguments

Defendants argue that Plaintiff's Section 1983 equal protection claim against Sherrard and Brister should be dismissed because Plaintiff's Petition "does not articulate how J.T.'s right to equal protection was violated, particularly how Mr. Brister or Ms. Sherrard treated J.T. differently from any similarly situated individual," as it required to state a class-of-one equal-protection claim. (Doc. 5-1 at 9–10.) Defendants assert that Plaintiff's equal protection claim fails for the additional reason that she has not overcome Brister or Sherrard's qualified immunity. (*Id*. at 10.)

In response, Plaintiff argues that she has supported the differential treatment component of her equal protection claim by asserting that Brister and Sherrard "treated J.T.'s sexual harassment complaints differently than other complaints of improper conduct," which denied J.T. equal protection of the law. (Doc. 7 at 11.)

In reply, Defendants reiterate that Plaintiff has failed to plausibly allege that Defendants treated similarly situated students differently without a rational basis. (Doc. 10 at 8.) Defendants

also maintain that Brister and Sherrard are entitled to qualified immunity as to this claim "because there was no 'clearly established' right on these specific facts." (*Id.*)

## 2. Applicable Law

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). The Supreme Court has recognized equal protection claims based on a "class of one." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000). To state a "class of one" equal protection claim, "the plaintiff must establish (1) he was 'intentionally treated differently from others similarly situated' and (2) there was no rational basis for any such difference." *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) (citing *Whiting v. Univ. of S. Miss.*, 51 F.3d 339, 348 (5th Cir. 2006)).

## 3. Analysis

In support of her equal protection claim based on a class of one, Plaintiff argues that Brister and Sherrard "treated J.T.'s sexual harassment complaints differently than other complaints of improper conduct"; namely, J.T.'s verbal altercation with Mr. Brown. (*See* Doc. 7 at 11.) Contrary to Plaintiff's assertion, however, the Petition does not "clearly allege[] that defendants Sherrard and Brister took no action against the [Southern] Lab students for sexually harassing J.T." (*Compare* Doc. 7 at 11, *with* Doc. 1-2 at 1–5.) In fact, the Petition contains no allegations that the individual Defendants treated other, similarly situated students differently. Nor does the Petition allege that there was no rational basis for the disciplinary action taken against J.T. for the verbal altercation with his teacher. Moreover, as the Fifth Circuit recently noted, "the fact that school officials may not have adequately responded to a student's complaints does not itself rise to the

17

level of an equal protection violation." *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022) (internal quotation marks and brackets omitted) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)). As a result, Plaintiff has failed to state a violation of J.T.'s rights under the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Section 1983 equal protection claims against Brister and Sherrard.

### C. First Amendment

#### 1. Parties' Arguments

Defendants argue that Plaintiff's First Amendment Section 1983 claims against Brister and Sherrard should be dismissed because (1) the Petition does not allege facts supporting these claims and (2) even if it did, "the plaintiff cannot identify a controlling case saying that a specific action taken by Mr. Brister or Ms. Sherrard violated a clearly established right." (Doc. 5-1 at 11.) As a result, Brister and Sherrard are entitled to qualified immunity as to these claims. (*Id.*; *see also* Doc. 10 at 8.)

In response, Plaintiff maintains that Sherrard and Brister violated J.T.'s First Amendment rights by retaliating against him for reporting sexual harassment. (Doc. 7 at 9–10.) Plaintiff further contends that Defendants are not entitled to qualified immunity because it was clearly established at the time that the First Amendment prohibits adverse government action against an individual because of their exercise of First Amendment freedoms. (*Id.* at 10.)

#### 2. Applicable Law

To establish a First Amendment retaliation claim, "plaintiffs must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity,

and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Frampton v. City of Baton Rouge/Parish of E. Baton Rouge*, No. 21-CV-362-JWD-SDJ, 2022 WL 90238, at *14 (M.D. La. Jan. 7, 2022) (internal brackets omitted) (quoting *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002)). As the Fifth Circuit has observed:

> It is axiomatic that the First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms . . . . It has likewise long been established that students do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.

*Jackson v. Ladner*, 626 Fed. App'x 80, 88 (5th Cir. 2015) (internal quotations and citations omitted) (citing *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999); *Tinker v. Des Moines Indep. Cnty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).

### 3. Analysis

"When considering a defendant's entitlement to qualified immunity, [the Court] must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would understand that what he is doing violates [the law].'" *McLin v. Ard*, 866 F.3d 682, 695–96 (5th Cir. 2017) (quoting *Morgan*, 659 F.3d at 371). "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 696 (quoting *Morgan*, 659 F.3d at 371–72). "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Id.* (quoting *Morgan*, 659 F.3d at 372).

Even if the allegations of Plaintiff's Petition sufficiently established that Brister and Sherrard's conduct was in violation of J.T.'s First Amendment rights, the Court still concludes that

Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claim under the factual circumstances, as alleged in the Petition. As previously noted, Plaintiff has the burden of establishing a violation of clearly established law. *See Garcia*, 957 F.3d at 600 (citing *Cass*, 814 F.3d at 733). Here, Plaintiff has not pointed to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *McLin*, 866 F.3d at 696 (citation omitted). Consequently, the Court does not find that the law "so clearly and unambiguously prohibited" Brister and Sherrard's conduct that every reasonable school official would understand that their actions—*i.e.*, the disciplinary actions taken against J.T. following his verbal altercation with a teacher—violated the First Amendment. *See id*. at 695 (quoting *Morgan*, 659 F.3d at 371). Accordingly, the Court concludes that Sherrard and Brister are entitled to qualified immunity and, for that reason, will grant Defendants' motion to dismiss Plaintiff's First Amendment claims under Section 1983.

## VI. Discussion of State Law Claims

Having dismissed all of Plaintiff's federal claims, and considering the factors set forth in 28 U.S.C. § 1367(c), as well as "the common law factors of judicial economy, convenience, fairness, and comity," the Court declines to exercise supplemental jurisdiction over the remaining pendent state law claims, consistent with the Fifth Circuit's general rule. *See Parker & Parsley Petroleum Co. v. Dress Indus.*, 972 F.2d 580, 585 (5th Cir. 1992); *Conway v. Louisiana Through DPS&C*, No. 18-33, 2021 WL 357357, at *1 (M.D. La. Feb. 2, 2021) (deGravelles J.) (citing *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011)). Plaintiff's claims against Sherrard based on violations of Louisiana law are therefore dismissed without prejudice.

## VII.   Leave to Amend

"A court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *JMCB, LLC v. Bd. of Com. & Indus.*, No. 17-75, 2018 WL 11319077, at *6 (M.D. La. Aug. 23, 2018) (quoting *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also* 5B Charles A. Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1357 (3d ed. 2016) ("A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief."). Here, Plaintiff asks for an opportunity to amend her Petition in the event the Court finds that there are deficiencies. (*See* Doc. 7 at 14). The Court will therefore act in accordance with this "wise judicial practice" and grant Plaintiff leave to amend the operative complaint to state viable claims.

## VIII.   Conclusion

Accordingly,

**IT IS ORDERED** that *Defendants' Motion to Dismiss Plaintiff's Claims* (Doc. 5) filed by Defendants is **GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have twenty-eight (28) days in which to amend the operative complaint to cure the

above deficiencies. Failure to do so will result in dismissal of her claims with prejudice.

Signed in Baton Rouge, Louisiana, on <u>March 23, 2022</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**